**Larry W. BOOTH, Appellant,**

v.

**CSX TRANSPORTATION, INC., Appellee.**

No. 2005–CA–002568–MR.

Court of Appeals of Kentucky.

Dec. 15, 2006.

Alva A. Hollon, Jr., Jacksonville, FL, Allen K. Gruner, Louisville, KY, for appellant.

Edward H. Stopher, Rod D. Payne, Louisville, KY, for appellee.

Before COMBS, Chief Judge; ACREE, Judge; KNOPF,[1] Senior Judge.

*OPINION*

ACREE, Judge.

Larry W. Booth (Booth) appeals the Jefferson Circuit Court's grant of summary judgment in favor of CSX Transportation, Inc. (CSX), on Booth's Federal Employers' Liability Act (FELA) claim, in which Booth sought to recover damages from CSX for injuries he sustained while working as a railroad carman for CSX. For the reasons set forth below, we reverse the circuit court's grant of summary judgment.

Booth worked for CSX from 1973 through March 2002. From 1973 until 1986/87, Booth worked primarily as a carman which required him to walk long distances on ballast[2] in order to inspect rail cars. In 1986/87, Booth took a new job with the railroad resulting in a reduction in the amount of Booth's walking in the rail yard and on the ballast rock. His new job primarily consisted of inside work.

In 2001, Booth began to experience problems with his knees. Booth first complained about the pain during a visit to his family physician, Dr. Anthony Hubbuch, on February 14, 2002. Dr. Hubbuch referred Booth to an orthopedic surgeon, Dr. Zach Stearns. Booth underwent surgery on his left knee on March 18, 2002 and again on August 15, 2002. Booth then underwent surgery on his right knee in November 2003. All of the surgeries were performed by Dr. Stearns.

On November 10, 2003, Booth filed a Complaint against CSX. Booth's claim arose out of allegations that he suffered from a bilateral degenerative arthritic condition in his knees as a result of the cumulative trauma experienced from walking on large ballast as opposed to small ballast. Booth's treating physician, Dr. Stearns, was deposed and testified that many factors could have contributed to Booth's degenerative condition including the "type of work he does." Booth also retained the

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)9(b) of the Kentucky Constitution and KRS 21.580.

2. Ballast is a material used for drainage of water accumulating around and on railroad tracks and ties. It consists of various sized stone or rock chips. To a layman, it may be perceived as gravel.

services of Raymond A. Duffany, a Railway Engineering Consultant, to conduct a site inspection of the facilities where Booth worked for CSX. More specifically, Mr. Duffany examined the ballast on which Booth walked while employed by CSX. In April, 2004, Mr. Duffany opined that "the ballast utilized in many of the walkway areas ... was of improper size and gradation." Booth confirmed, during his deposition, that sometime in the 1980s the size of the ballast changed, in that it got smaller.

CSX moved for summary judgment, contending that there existed no genuine issues of material fact and it was entitled to judgment as a matter of law. CSX argued Booth's testifying physicians were unable to establish causation between the size of the ballast used in the rail yard walkways and Booth's knee condition. CSX specifically alleged Booth only provided expert testimony on the single issue that CSX was negligent as a result of failing to provide ballast of a proper size and gradation, but there was no testimony from a qualified physician which causally related a degenerative arthritic condition in Booth's knees to walking on large ballast as opposed to small ballast.

The trial court found Booth was unable to establish causation between his injuries and the size of the ballast and granted CSX's motion for summary judgment[3]. This appeal followed.

We review a circuit court's grant of summary judgment de novo. *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App.2000). Summary judgment is proper when, as a matter of law, it appears that it would be impossible for the non-moving party to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky.1991). Upon review, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Id. at 480.

■ FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. § 51. In FELA actions, federal substantive law governs. *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). FELA is "a remedial and humanitarian statute that was specially enacted by Congress to afford relief to employees from injury incurred in the railway industry." *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir.1973). "Congress intended FELA to be a departure from common law principles of liability as a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Hardyman v. Norfolk & Western Ry. Co.*, 243 F.3d 255, 258 (6th Cir.2001) (citations and quotations omitted).

■ "[A] FELA plaintiff asserting a cause of negligence against its employer

---

**3.** CSX also argued that Booth's claims were preempted as a matter of law pursuant to the Federal Railway Administration (FRA), as Congress enacted the Federal Railroad Safety Act of 1970 (FRSA) to promote railroad employee safety and to make railroads safety regulations "nationally uniform," and Booth's FELA action sought to regulate the same subject matter regulated by the FRA in the track safety standards, and seeks to impose a more stringent duty upon CSX than deemed appropriate by the FRA. The court's order only addressed CSX's motion for summary judgment which disposed of Booth's claim. It is this issue alone we will consider upon appeal.

must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." Id. (citations and quotations omitted). However, FELA plaintiffs have a lower standard of proof than plaintiffs in ordinary negligence cases. *See Harbin v. Burlington Northern R.R. Co.*, 921 F.2d 129, 131 (7th Cir.1990).

■ In FELA cases,

[The] plaintiff must present more than a scintilla of evidence to prove that (1) an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad, (2) the employment was in the furtherance of the railroad's interstate transportation business, (3) the employer railroad was negligent, and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the Act.

■ *Aparicio v. Norfolk Western Ry. Co.*, 84 F.3d 803, 810 (6th Cir.1996)(overruled on other grounds by *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000))(citing *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir.1985)). Thus, "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

The Supreme Court in Rogers also discussed the quantum of proof needed to survive summary judgment:

Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made....

Id. at 506–07, 77 S.Ct. 443.

■ We conclude that Booth has provided adequate proofs to justify the conclusion that CSX's negligence played a part in producing his injury. Booth submitted the verified affidavit of his expert, in which Mr. Duffany stated that the ballast utilized in many of the walkway areas where Booth worked were of improper size and gradation; that CSX failed to maintain those walkways to their own standards, industry standards, standards recommended by the American Railway Engineering and Maintenance of Way Association, and standards recommended by the Federal Road Administration; that CSX knew or should have known that the walkway conditions that existed where Booth performed a majority of his carman duties created unnecessary hazards for CSX employees; and that CSX possessed the knowledge, expertise and means to construct and maintain walkways along and between yard tracks to its own standards as well as those which are practiced throughout the industry.

Dr. Stearns testified, in his deposition, that Booth's occupation could be one factor in causing his degenerative condition. Dr. Stearns specifically testified that "walking on rough and uneven surfaces ...," as Booth did as a CSX employee, "is certainly conducive to increased degenerative change...." (Dr. Zach Stearns deposition at 10).

In its opinion, the circuit court states:

It does not appear that Plaintiff can prove through the testimony of Mr. Duffany that Plaintiff's degenerative arthritic condition in his knees can be attributed to his walking on large ballast as

opposed to small ballast during his employment with CSX. Additionally, it does not appear that the testimony of either of Plaintiff's physicians provides the necessary testimony stated within a reasonable degree of medical probability to establish causation on the part of CSX. Accordingly, it appears that Plaintiff is unable to establish causation on the part of CSX, which is fatal to his claim as a matter of law.

We disagree.

"The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, *even though entirely circumstantial,* from which the jury may with reason make that inference." Rogers at 508 (emphasis added). In light of the evidence presented thus far, the case should survive summary judgment and the jury should be given the opportunity to decide the matter.

For the foregoing reasons, we reverse the circuit court's grant of summary judgment, and remand this case for further proceedings.

ALL CONCUR.